FILED

DEC 1 0 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD DZIALO and JAMES
WILFORD,

        Plaintiffs,

                                   CV 09-752-PK

                                   OPINION AND
v.                                ORDER

U.S. BANK NATIONAL ASSOCIATION,

        Defendant.

_____

PAPAK, Magistrate Judge:

        Rachelle Capps, Edward Dzialo, and James Wilford filed this wage and hour class action

lawsuit on behalf of themselves and others similarly situated against defendant U.S. Bank

National Association ("U.S. Bank") on July 1, 2009, alleging U.S. Bank's liability for violation of

Or. Rev. Stat. 652.140, which requires employers to pay employees their final wages within a

specified time following the termination of the employees' employment. On January 11, 2010,

Page 1 - OPINION AND ORDER

U.S. Bank answered the plaintiffs' complaint, alleging counterclaims for unjust enrichment, *quantum meruit*, and money had and received against plaintiff Wilford and against members of the putative class who may also have received overpayments from U.S. Bank at or near the termination of their employment. On June 25, 2010, plaintiffs moved to dismiss Capps as a plaintiff and as a putative class representative, and on September 23, 2010, the court granted plaintiffs' motion. On October 27, 2010, U.S. Bank amended its pleading to allege its counterclaims for unjust enrichment and for money had and received against plaintiff Dzialo, as well as against Wilford and unspecified putative class members. This court has jurisdiction over plaintiffs' action pursuant to 28 U.S.C. § 1332(d)(2).

Now before the court are plaintiffs' motion (#56) to certify the "late final payment following involuntary discharge" class that Dzialo and Wilford putatively represent, plaintiffs' motion (#87) to strike the declaration of Julie Leas, filed by U.S. Bank in support of its opposition to plaintiffs' class-certification motion, and U.S. Bank's motion (#96) to strike the declaration of Robert Fountain, filed by plaintiffs in support of their motion to certify the class. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, plaintiffs' class certification motion, plaintiffs' motion to strike, and U.S. Bank's motion to strike are each denied.

## LEGAL STANDARD

### I.    Motion to Strike

Federal Civil Procedure Rule 12 provides that the district courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on their own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). The disposition of a

motion to strike is within the discretion of the district court. *See Federal Sav. & Loan Ins. Corp. v. Gemini Management*, 921 F.2d 241, 244 (9th Cir. 1990). Motions to strike are disfavored and infrequently granted. *See Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wind Distribs. Pty., Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by *Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

## II.    Class Certification

Federal Civil Procedure Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007). The party seeking certification bears the burden of showing that the proposed class meets the requirements of Federal Rule of Civil Procedure Rule 23(a) and (b). *See id.* Although the district court accepts the substantive allegations of the complaint as true, the court also must consider the nature and range of proof necessary to establish those allegations and conduct a "rigorous analysis" to determine whether the claim satisfies Rule 23(a) requirements. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Thus, the court may look to supplemental information to "allow an informed judgment" on the Rule 23 requirements. *Id.* Although a court may need to inquire into the substance of a case to ascertain satisfaction of the Rule 23 requirements, the court should not "advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

## FACTUAL BACKGROUND

### I.    Plaintiff Dzialo

Dzialo was a salaried employee of U.S. Bank until his involuntary discharge on or around

March 13, 2009.  It is undisputed that March 13, 2009, a Friday, was the last full day of Dzialo's

employment, and U.S. Bank's records reflect that he was terminated effective that date.

However, Dzialo testifies that he was not informed of his termination until the following

Monday, March 16, 2009, when he called in on the way to work and was informed that his

position had been eliminated.  It is undisputed that Dzialo did not perform job duties for U.S.

Bank on any date subsequent to March 13, 2009.

Dzialo received wages from U.S. Bank via direct deposit on March 13, 2009, U.S. Bank's

date of record for the effective date of his termination.  Dzialo's wage statement of March 13,

2009, indicated that he was being paid in full for all work performed during the pay period

ending the following Sunday, March 15, 2009.  However, the amounts deposited to Dzialo's

account on March 13 did not include amounts Dzialo was owed for accrued but unused vacation.

Shortly thereafter, U.S. Bank provided Dzialo with documents advising him that he was

eligible to receive $3,156.52 in severance benefits on the condition that he sign a release of

employment-related claims against U.S. Bank.  Dzialo reviewed but declined to sign the release

of claims agreement.

On March 31, 2009, U.S. Bank paid Dzialo his final wages for accrued but unused

vacation time, as well as unspecified amounts to which Dzialo was apparently entitled in

connection with a "vacation purchase" program maintained by U.S. Bank, by direct deposit.  That

same date, it also paid him an additional four hours of regular pay and $3,156.25 designated as

Page 4 - OPINION AND ORDER

"severance." It is not clear from the evidence in the record why Dzialo received the additional four hours of regular pay, or why U.S. Bank elected to pay him severance benefits despite his refusal to execute the release of claims.

## II.    Plaintiff Wilford

Wilford was an hourly employee of U.S. Bank from July 24, 2006, until his involuntary discharge approximately three weeks later on August 10, 2006. Specifically, Wilford's employment was terminated at the end of the day on August 10, 2006, Wilford's last day of work, effective immediately.

Prior to his termination, Wilford would pick up his paychecks from U.S. Bank's payroll department, on Tuesdays. That is, U.S. Bank did not have a history of paying Wilford's wages by direct deposit, and did not have his authorization to mail his paychecks to his address.

On August 11, 2006, a Friday and the business day following the day on which he was terminated, Wilford went to U.S. Bank's offices and inquired regarding his final paycheck. Wilford's former supervisor advised Wilford that he would "figure that out" and get back to him. The following Tuesday, August 15, 2006, Wilford returned to U.S. Bank's offices and inquired again regarding his final paycheck, which he had not yet received. Wilford's former supervisor advised Wilford that he did not have the paycheck, but that he would advise payroll of the issue. Wilford ultimately received his final paycheck through the mail on approximately the following Thursday, August 17, 2006. Wilford never requested or authorized that his final paycheck be sent to him via postal mail. It appears that the final paycheck was mailed on August 11, 2006, from Robbinsdale, MN.

### III.    Putative Class Members

The proposed class is made up of former Oregon employees of U.S. Bank involuntarily

discharged by U.S. Bank between July 1, 2006, and July 1, 2009, who did not receive timely

payment of their final wages.  It appears that U.S. Bank itself has identified 241 instances within

the class period in which it failed to pay an involuntarily discharged employee on or before the

end of the business day following the employee's termination.  Plaintiffs assert that their expert,

statistician Dr. Robert Fountain, has identified more than 400 instances of dilatory payment of

final wages.

### IV.    U.S. Bank's Payroll Procedures Relating to Oregon Employees

U.S. Bank's national payroll functions are all centralized to one of three locations.  Most

payroll functions for U.S. Bank's Oregon employees are performed in U.S. Bank's Robbinsdale,

MN, payroll department. U.S. Bank maintains two payroll specialist positions that handle Oregon

payroll functions at its Robbinsdale location.  During the class period, three individual employees

held one or the other of these two positions.

It appears that the procedures U.S. Bank routinely followed during the class period

required that involuntary terminations be reported to the appropriate payroll specialist only after

the terminated employee was informed of the termination, regardless of when the termination

decision was made.  Payroll specialists checked for such reports a minimum of twice per day.

Once such a report came to a payroll specialist's attention, payment of wages to the terminated

employee was processed.  In the event direct deposit of wages was not authorized for the

terminated employee, it appears that payroll procedure was to issue a final check for mailing to

the terminated employee, regardless of whether that employee had authorized delivery of final

Page 6 - OPINION AND ORDER

payment of wages through the mail.

## ANALYSIS

### I.    Motions to Strike

Plaintiffs move to strike the declaration of Julie Leas (#84), filed by U.S. Bank in support

of its opposition to the class certification motion.  U.S. Bank has since filed an amended Leas

declaration (#91); plaintiffs have not expressly indicated that they intend their motion to strike to

apply to the amended Leas declaration, but I nevertheless so construe it.  U.S. Bank moves to

strike the declaration of Robert Fountain (#59), filed by plaintiffs in support of their motion for

class certification.

Federal Civil Procedure Rule 12(f) permits the courts to "strike *from a pleading* an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f) (emphasis supplied); *see also, e.g.*, *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d

880, 885 (9th Cir. 1983) ("[u]nder the express language of the rule, only pleadings are subject to

motions to strike"); *United States v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999) ("[a] motion to

strike is limited to pleadings").  Because neither the Leas declaration nor the Fountain declaration

is a pleading or contained within a pleading, Rule 12(f) provides no authority for striking either

declaration from the docket.

In addition, however, it is well established that the district courts enjoy an inherent power

to manage and control their own dockets.  *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936) (affirming "the power inherent in every court to control the disposition of the causes on its

docket with economy of time and effort for itself, for counsel, and for litigants").  It is clear that

this inherent power includes the authority to sanction procedural impropriety in an appropriate

manner, including by striking impertinent documents from the docket. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect" of the courts' inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process;" holding that because "outright dismissal of a lawsuit . . . is within the court's discretion," in consequence less severe sanctions are "undoubtedly within a court's inherent power as well"); *Atchison, T. & S.F. Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("well established that district courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion") (citations, internal quotation marks omitted); *see also Lamos v. Astrue*, Case No. 07-56000, 2008 U.S. App. LEXIS 9143 (9th Cir. April 23, 2008) (unpublished disposition) (affirming inherent power of the courts to strike documents other than pleadings from the docket); *Centillium Communs., Inc. v. Atl. Mut. Ins. Co.*, Case No. C 06-07824 SBA, 2008 U.S. Dist. LEXIS 20719 (D. Cal. March 17, 2008) (striking a procedurally improper motion pursuant to the court's inherent power).

Although the parties argue in support of their respective motions that significant portions of the Leas declaration and the Fountain declaration are inadmissible, neither party asserts that either declaration was improperly filed or so procedurally improper as to warrant exercise of the court's inherent power to strike procedurally improper or prejudicial filings. I therefore decline to strike either declaration pursuant to the court's inherent power to control and manage its docket.

For the foregoing reasons, plaintiffs' motion to strike and U.S. Bank's motion to strike are each denied. Notwithstanding the foregoing, inadmissible material contained in any document offered into evidence by either party has been and will continue to be disregarded.

## II.    Motion for Class Certification

Plaintiffs move for certification of the "late final payment following involuntary discharge" class that Dzialo and Wilford putatively represent. A class may properly be certified only if the requirements of both Federal Civil Procedure Rule 23(a) and Federal Civil Procedure Rule 23(b) are satisfied.

### A.    Requirements of Federal Civil Procedure Rule 23(a)

Federal Civil Procedure Rule 23(a) provides that plaintiffs may represent a class of similarly situated persons in a class action lawsuit only where:

(1)    the class is so numerous that joinder of all members is impracticable,

(2)    there are questions of law or fact common to the class,

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.    Numerosity

Federal Civil Procedure Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable" before a class may be certified. Fed. R. Civ. P. 23(a)(1). The courts of the District of Oregon have held that, within this District, "as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement." *Wilcox Dev. Co. v. First Interstate Bank, N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (citation omitted).

Here, U.S. Bank concedes that 241 of its former employees who were involuntarily terminated during the class period were not paid in a timely fashion. Although plaintiffs suggest

Page 9 - OPINION AND ORDER

that the actual number of putative class members may be significantly larger than 241, they argue

that a class of at least 241 members satisfies the numerosity requirement, and U.S. Bank does not

contest certification on numerosity grounds. I find no fault with the parties' analysis of

numerosity. Because a putative class of at least 241 members is so numerous that joinder of all

members would be impracticable, I find that the putative class satisfies the numerosity

requirement.

### 2. Commonality

Pursuant to Federal Civil Procedure Rule 23(a)(2):

> A class has sufficient commonality "if there are questions of fact and law which
> are common to the class." Fed. R. Civ. P. 23(a)(2). The commonality
> preconditions of Rule 23(a)(2) are less rigorous than the companion requirements
> of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All
> questions of fact and law need not be common to satisfy the rule. The existence
> of shared legal issues with divergent factual predicates is sufficient, as is a
> common core of salient facts coupled with disparate legal remedies within the
> class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, all putative class members' claims are governed by precisely the same provisions of

Oregon statutory law, namely, O.R.S. 652.140 and 652.150. *See, e.g., Young v. State*, 340 Or.

401, 408-409 (2006); *Sabin v. Willamette Western Corp.*, 276 Or. 1083, 1093 (1976). In

addition, many – although clearly not all – material facts are common to all putative class

members' claims, including the requisite fact that U.S. Bank terminated each putative class

member's employment, as well as U.S. Bank's uniform payroll processing procedures and

policies. Because all putative class members claims' share key legal and factual questions in

common, and because the presence of additional, divergent factual issues not common to all class

members' claims does not defeat Rule 23(a) commonality, the putative class clearly satisfies the

commonality requirement.

### 3.    Typicality

Pursuant to Federal Civil Procedure Rule 23(a)(3):

> The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of
> the representative parties are typical of the claims or defenses of the class." Fed.
> R. Civ. P. 23(a)(3).  Under the rule's permissive standards, representative claims
> are "typical" if they are reasonably co-extensive with those of absent class
> members; they need not be substantially identical.

*Hanlon*, 150 F.3d at 1020.

Here, Dzialo and Wilford assert precisely the same claims on their own behalf that they

do on behalf of the absent members of the putative class.  U.S. Bank does not oppose

certification on typicality grounds.  Because the named plaintiffs' claims are co-extensive with

those of the absent putative class members, the typicality requirement is satisfied.

### 4.    Representativeness

Pursuant to Federal Civil Procedure Rule 23(a)(4):

> To satisfy constitutional due process concerns, absent class members must be
> afforded adequate representation before entry of a judgment which binds them.
> *See Hansberry v. Lee*, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940).
> Resolution of two questions determines legal adequacy:  (1) do the named
> plaintiffs and their counsel have any conflicts of interest with other class members
> and (2) will the named plaintiffs and their counsel prosecute the action vigorously
> on behalf of the class?  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507,
> 512 (9th Cir. 1978).

*Hanlon*, 150 F.3d at 1020.

In addition to the foregoing, class counsel must satisfy the requirements set forth in

Federal Civil Procedure Rule 23(g)(1) and (g)(4).  *See* Fed. R. Civ. P. 23(g)(2).  Rule 23(g)(4)

provides that "[c]lass counsel must fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(g)(4). Rule 23(g)(1) provides, in relevant part, that the court:

    (A)    must consider:

           (i)    the work counsel has done in identifying or investigating potential claims in the action;

           (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

           (iii)    counsel's knowledge of the applicable law; and

           (iv)    the resources that counsel will commit to representing the class;

    (B)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

Fed. R. Civ. P. 23(g)(1). Of relevance to the inquiry whether proposed class counsel may adequately represent a proposed class is the Supreme Court's instruction that "an attorney who represents another class against the same defendant may not serve as class counsel" for a second class. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).

### a. Representativeness of the Named Plaintiffs

Plaintiffs offer evidence that Dzialo and Wilford have no conflicts of interest with the absent putative class members, and that they intend to pursue this action vigorously on behalf of the putative class. Plaintiffs further offer evidence that Dzialo and Wilford have assisted their attorneys in litigating this action, are in regular contact with their attorneys, have monitored all developments in the litigation, understand the claims they are asserting on their own behalf and on behalf of absent putative class members, and understand the responsibilities and duties they owe to absent class members. U.S. Bank offers no contrary evidence, and moreover does not

contest certification on the grounds that the named plaintiffs are not adequate representatives of the putative class. Because the evidence tends to establish that the named plaintiffs have no conflict of interest with absent putative class members and that the named plaintiffs will prosecute this action with the requisite vigor, I find that the named plaintiffs may adequately represent the putative class pursuant to Rule 23(a)(4).

### b.    Representativeness of Proposed Class Counsel

Plaintiffs offer evidence that their attorneys have performed significant work in identifying and investigating the claims in this action, and have significant experience handling class actions of the kind proposed here and in litigating wage and hour violations. Plaintiffs further offer evidence that their counsel would prosecute this action vigorously if permitted to serve as class counsel. U.S. Bank offers no contrary evidence. However, U.S. Bank directs the court's attention to other lawsuits brought against it by parties represented by the attorneys who represent the plaintiffs in this action, and argues that the prosecution of these pending actions creates a conflict of interest such that plaintiffs' counsel should not be permitted to serve as class counsel to the putative class at issue in this action.

U.S. Bank notes that plaintiffs' counsel also represent the claimants in *Thomas v. U.S. Bank Nat'l Ass'n*, Jackson County Circuit Court Case No. 08-289-L3, a proposed class action based on the same violations of Oregon wage and hour law alleged in this action and apparently contemplating a class period of January 2005 through January 2008, a time period overlapping with the class period contemplated in this action. U.S. Bank argues that representations made on behalf of the *Thomas* plaintiffs (that Jackson County was a convenient forum for the class members in that action) conflict with assertions made on behalf of the proposed class in this

Page 13 - OPINION AND ORDER

action (that this forum is convenient to the class members, and that one single adjudication is the superior way to litigate the class members' claims). U.S. Bank makes similar arguments regarding lawsuits brought by plaintiffs' counsel in Coos County, *Bassett v. U.S. Bank Nat'l Ass'n*, Coos County Circuit Court Case No. 08-CV-66, and in Multnomah County, *Davis v. U.S. Bank Nat'l Ass'n*, Multnomah County Circuit Court Case No. 0801-906. U.S. Bank cites the Supreme Court's decision in *Ortiz, supra*, for the proposition that counsel may not represent a class both in this action and in any of the other three pending proposed class actions.

I agree with U.S. Bank that a conflict of interest would arise in the event plaintiffs' attorneys were permitted to serve as class counsel in both this action and in any of the foregoing three pending proposed class actions. However, there is no indication in the evidentiary record before the court that any class has been certified in any of the three pending state-court actions. Therefore, although a conflict of interest could yet arise in the event the class were certified in this action and then, subsequently, also in one of the pending state-court actions, such a conflict has not yet arisen. I therefore find that plaintiffs' counsel may adequately represent the putative class.

### B.    Requirements of Federal Civil Procedure Rule 23(b)

Federal Civil Procedure Rule 23(b) provides that a class action may only be maintained if at least one of the following three factors is satisfied:

    (1)    prosecuting separate actions by or against individual class members would create a risk of:

        (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3)     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> > (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Here, plaintiffs argue that the class is certifiable under the third factor –

predominance of common questions over individual questions of law and fact and superiority of

class action over other available methods – and do not offer evidence or argument relating to the

first two enumerated factors.

### A.     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591,

623 (1997), *citing* 7A Wright, Miller, & Kane 518-519.

Page 15 - OPINION AND ORDER

> This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Wright & Miller, supra, § 1778. Settlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on "legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 117 S. Ct. at 2249.

*Hanlon*, 150 F.3d at 1022.

Here, as discussed above, there are significant issues of law and fact common to all plaintiffs' claims. However, the claims asserted on behalf of the putative class necessarily raise numerous issues that will require individual inquiry, analysis, and resolution. Perhaps chief among these is the issue of U.S. Bank's willfulness in failing to make timely payment of departing employees' final wages, a necessary requisite to each putative class member's claim for money damages, *see, e.g.*, *Young*, 340 Or. at 408-409; *Sabin*, 276 Or. at 1093. Although plaintiffs argue that the willfulness determination can be made by reference to evidence of U.S. Bank's uniform payroll-processing procedures and to statistical evidence derived from data reflecting the experience of all putative class members, without need for extensive individual inquiry, it is clear that individual inquiry cannot be eliminated from the willfulness analysis. With respect to each putative class member, it will be necessary to determine whether U.S. Bank's failure to make timely payment of final wages was the consequence of a reasonable, good faith belief that the departing employee had already received all wages that were due. *See* O.R.S. 652.150(1). In addition, for employees, if any, who failed to submit their time records to U.S. Bank prior to the date their final wages became due, the court will be called upon to determine

Page 16 - OPINION AND ORDER

whether U.S. Bank's failure to make timely payment of final wages the consequence of the bank's good-faith underestimation of the amount of wages due. *See* O.R.S. 652.150(1)(b). For those employees who received final payment of wages by mail, the court will further be called upon to determine whether each employee requested that final payment be sent by mail. *See* O.R.S. 652.140(4). In connection with plaintiffs' claim for attorney fees incurred in prosecuting this action, for those employees who were not paid final payment of wages within 48 hours after the close of the next business day following their termination, the court will further be called upon to determine whether each such employee was terminated for a willful violation of his or her contract of employment. *See* O.R.S. 652.200(2). Additionally, various caps to the amount of waiting time penalties that may be assessed under O.R.S. 652.150 may apply depending on a variety of factors potentially requiring individual inquiry, including whether departing employees provided U.S. Bank with written notice of the failure to pay all final wages, and whether employee terminations occurred singly or as part of group layoffs. *See* O.R.S. 652.150.

Moreover, U.S. Bank has asserted counterclaims against both of the two named plaintiffs and against those absent members of the putative class as to whom U.S. Bank made overpayments of final wages. All such counterclaims will require individual inquiry to resolve.

I am persuaded that the necessity for individual inquiry in connection with the claims asserted on behalf of the absent members of the putative class belies plaintiffs' assertion that common questions predominate over individual ones. *See, e.g., Belknap v. U. S. Bank Nat'l Ass'n*, 235 Or. App. 658, 664-665 (2010) (in a class action brought to recover waiting-time penalties under O.R.S. 652.150 by former employees of U.S. Bank represented by the law firm representing the plaintiffs in this action, quoting the reasoning of the trial court below in support

of its decision to decertify the late final payment of wages class in that action on the grounds that the documentary evidence left "many different types of factual issues unresolved in most, if not all, of the" absent class members' claims, with the result that "class treatment is not a superior method in resolving the controversy."). Most, if not all of the putative class members claims will require at least some degree of factual inquiry, and it appears likely that witness testimony will be required to resolve a large proportion of the individual factual issues so raised. Where common and individual questions appear likely to be of roughly equal significance in determining the merits of each putative class member's claims, I cannot conclude that common questions are predominant. I therefore find that the predominance requirement of Rule 23(b)(3) is not satisfied here.

### B.    Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.*

The alternate mechanisms of dispute resolution available to putative class members here include both joinder and separate individual lawsuits. Although joinder would almost certainly be impractical here given the size of the putative class, plaintiffs do not offer compelling arguments as to why multiple individual lawsuits would not be feasible. The availability of attorney fees to prevailing plaintiffs in wage and hour actions under Oregon law effectively mitigates the risk that any individual plaintiff with a viable claim against U.S. Bank would be unwilling to undertake an individual action; moreover, U.S. Bank offers evidence that counsel

Page 18 - OPINION AND ORDER

for plaintiffs have represented more than a hundred plaintiffs in individual wage and hour actions against U.S. Bank. In light of the availability of individual resolution of claims and the necessity for individual inquiry in the analysis of the putative class members' claims, I cannot conclude that class action is a clearly superior procedural mechanism for adjudicating the claims of the putative class. I therefore find that the superiority requirement of Rule 23(b)(3) is not satisfied here.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#56) for class certification is denied, plaintiffs' motion (#87) to strike is denied, and U.S. Bank's motion (#96) to strike is denied.

Dated this 10th day of December, 2010.

Honorable Paul Papak
United States Magistrate Judge